The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to 20-2004. Attorney Morales, please introduce yourself for the record and proceed with your argument. Yes, good morning. My name is Javier Morales Ramos. I am addressing the court on behalf of Mr. Luis Alfredo Florentino-Rosario. May it please the court. Proceed, please. In this case, I want to pinpoint a couple of things that have been presented in the brief. Basically, the circumstances of Mr. Florentino. He was living in Dominican Republic. He has a child from another relation. Counsel, we know the facts. Get to the legal issues, please. Okay. What I am presenting is the legal matters based on Bailey and De Leon. To me, De Leon lets me think that the court requires a specific intent to prove the violation of the crime. What I presented to the district court was that Bailey defines a difference between specific versus general in the sense that there is a separation. Counsel, that may or may not be so, but Judge Bososa, in fact, gave a specific intent instruction. He augmented the patent jury instruction by telling the jury that they had to find that your client specifically intended to commit the crime. Yes, yes. I agree with that, but the judge did not give the jury the alternatives. What is the difference between purpose and knowledge, which is what I was saying? Bailey recognizes a difference, and that's what I was saying. There is a difference, but there's no law that I'm aware of, no case law that says that has to be included in a jury instruction. Yes. The jury made a finding of specific intent, and your client virtually admitted specific intent. In fact, may actually have admitted it. So, I don't understand what the issue is. Well, the issue is that just as there is no case law that says that it has to be given, I am asking the court to say that in certain cases, the instruction giving the jury information regarding what is purpose and what is knowledge. Counsel, I see no good reason to do any such thing, and I see a whole lot of reasons not to do that. You presented two arguments to us. One is your specific intent argument, and as Judge Selye has told you, it's hard to see that there was any error in the augmented instruction that was given, even if your premise is correct. Your second argument was a duress argument. Would you turn to that, please? Yes. The order at Docket Entry 46 issued by Judge Besosa when he granted the United States motion in limine to preclude the defendant from presenting duress evidence at trial basically eliminated any chance for the defendant to not only discuss duress, if duress is not allowed, the circumstances of why and how he came to Puerto Rico, he was not able to present those. Counsel, you just argued on specific intent that only in certain cases should the court give any such instruction. Here, the government says as to duress, you put on not even a colorable case of duress, particularly in light of your client's admission to the immigration officer that the reason he was illegally entering the country was, again, was that he wanted to secure duress that you think was colorable evidence. Well, first, Your Honor, I think that there is quite a lot of case law regarding the questionable value of airport interviews, many times because of problems with the language and problems with the use of the language. Counsel, that may be an attack on the strength of that evidence, but what is your affirmative evidence of duress? Well, I think that the most important thing is that he was attacked with a machete and that he was in fear of his life, and my position is that this was of a constant nature. The law requires an immediate threat. My question is whether when a person is under a constant continuing threat, does that apply as well? Counsel, even if those facts amount to a showing of duress, the question would become under duress to do what? There is every reason, perhaps, to relocate within his own country, to leave where he is in the Dominican. There may even be reason to flee to another country where he is lawfully permitted to enter, but he was under no duress to enter the United States illegally. Well, the question would be, Your Honor, reasonableness. I presented in my briefing... No, that's not what you think. There's a threshold legal question as to whether your evidence taken favorably to you amounts to duress, and there is nothing... If you take your evidence as favorably as we can, there's nothing that shows any compulsion to enter the United States. There's no showing that that's the only place he could have gone, that other places in the Dominican were unsafe for him, that other countries were unavailable to him, nothing like that. There's no offer of proof to that effect. Well, first, regarding the being at the Dominican Republic... Four minutes remaining, four minutes. He was in hiding for quite a few months before he came to Puerto Rico the first time. When he was deported, he was removed on September, but at the very precise moment that he went back to his house, he was again facing death threats, and he came back within a month. How is that responsive to the he could have relocated within the Dominican Republic or sought entry into another country where he had permission to enter? You don't seem to be beating the argument. Well, I think that, to me, it is a question of reasonableness. What is reasonable for a person that doesn't have the means to travel to Europe, to travel to other places? He had $2,000 to pay to be smuggled into the United States. It seems to me that countries like Guatemala and Honduras are much more available to him than the United States. I don't have an answer to that. I don't have an answer to that. Okay. Okay. Do you have anything else you'd like to add? No, not really. I think that maybe the question would be, is it reasonable to require a person to live in hiding as an alternative to coming to Puerto Rico as a reasonable place to go to? Okay. Thank you. We'll hear from the government. Thank you, Mr. Morales. At this time, Mr. Martin, please introduce yourself on the record so that you may begin argument. Good morning. May I please support Jordan Martin on behalf of the United States? Mr. Martin, before you get going, I had asked the clerk's office to reach out to both counsel as to whether, in fact, the defendant had been removed from the country, and I had asked that there be a stipulation. Were you aware of this? Because we have no response from you. No, Your Honor. I was not aware of that, and I apologize on behalf of myself and my office. Do you know whether he has been removed? Yes, Your Honor. He has been removed from the jurisdiction. He's back now, from under my knowledge, in the Dominican Republic. Okay. But you agree that that does not moot this appeal? I agree, Your Honor. There are still consequences due to this case for the defendant, Mr. Florentino, if he's convicted under this crime, has potential further burdens of entering the United States, as well as other consequences. Okay. Proceed, please. Thank you, Your Honor. First, let me start again with the issue on duress. By the defendant's own admission, the reason for his illegal reentry was to come here to make money, to return home to the United States, so to build a house, to build a home there. This admission in and of itself should negate defense of duress, as the defendant's admitting he has a desire to return to the D.R. and to be there, and that there is no danger in the future. Secondly, if you look at the elements of duress under U.S. v. Gonzalez-Perez, there's three elements, and the defendant has immediate threat of serious bodily injury or death. There's nothing immediate here. He was hiding out for a month. He came to the United States, was returned, and then within another month, he came to the United States again under the reentry. That's not immediate or imminent. That's basically a vague threat of future harm. Secondly, the second element is a well-grounded belief that the threat would be carried out. The defendant hasn't offered anything to show that he believed a future threat would be carried out. Moreover, as I already mentioned, his desire to return, his admitted desire to return, shows that that belief most likely doesn't even exist in his own mind. And second of all, he had other alternatives as discussed. One that wasn't already discussed was he could have stayed in hiding. The defendant spoke about how, if that's reasonable or not, but while he was in hiding, he still managed to acquire $2,000 to pay his smuggler, so he wasn't hiding for what the government knows in a way that he doesn't have complete access. But you don't know that, Mr. Martin. There's nothing in the record that says that he acquired the $2,000 while he was in hiding. That's correct, Your Honor. Yeah, so your speculation on your part doesn't help us to get to the answer in this case. Understood, Your Honor. But to reiterate what was already mentioned, he did have other alternatives there. He could have gone somewhere else in DR with that $2,000, and he could have used that $2,000 to pay for a legal means of entry into the United States by airplane or ferry. And then third, the third element, no reasonable opportunity to escape or otherwise frustrate the threat. Again, we just mentioned those. The government's stance is that we believe that he had plenty of reasonable other opportunities, other countries, other places in DR, or to stay in the United States under a legal means. Okay, turn to specific intent, please. Yes, Your Honor. The defendant is somewhat conflating the DRESS defense, the affirmative defense of DRESS, with specific intent here. There's no requirement of a lack of DRESS to affirm defense to it after you have violated that crime. And further, whether or not the court finds today that specific intent is an element of an attempt at a legal reentry, the district court already went above and beyond the pattern jury instruction for a legal reentry by requiring the attempt jury instruction, which in and of itself shows that the jury found that there was specific intent. I wanted to ask you about that. From the government's point of view, which is the better instruction, the one given in this case or the pattern jury instruction? The government believes that there is no element of specific intent required. So the initial five minutes remaining instruction that was given on a legal reentry, we stand by as the proper instruction for this crime. Okay. Okay, anything else? No, Your Honor. Well, just to reiterate on that proper instruction under the United States v. Cabral, the four elements of a legal entry are outlined, and none of those elements include a specific intent requirement. Beyond that, should the court have no further questions, I yield the rest of my time, and thank you. Seeing none from my colleagues, we accept your yielding the time. Thank you. Thank you, Your Honors. Thank you. Counsel can disconnect from the hearing in this manner.